# MISSISSIPPI MILLS *v.* COHN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF LOUISIANA.

No. 27. Argued October 20, 23, 1893. — Decided November 13, 1893.

The jurisdiction of Federal courts, sitting as courts of equity, cannot be enlarged or diminished by state legislation.

Whether such a court has jurisdiction in equity over a particular case, will be determined by inquiring whether by the principles of common law and equity, as distinguished and defined in this country and in the mother country at the time of the adoption of the Constitution of the United States, the relief sought in the bill was one obtainable in a court of law, or one which only a court of equity was fully competent to give.

A creditors' bill, to subject property of the debtor fraudulently standing in the name of a third party to the payment of judgments against the debtor, is within the jurisdiction of a Federal court, sitting as a court of equity, although, in the courts of the State in which the Federal court sits, state legislation may have given the creditor a remedy at law.

N. and S., being citizens of Louisiana, obtained a judgment in a court of the State against C., also a citizen of Louisiana, which they assigned to W. and L., citizens of Missouri. The assignees thereupon brought suit against C. in the Circuit Court of the United States for the Western District of Louisiana, putting the jurisdiction on the ground of diverse citizenship. *Held*, that under the provisions of § 1 of the act of March 3, 1875, 18 Stat. 470, c. 137, which statute was in force when the suit was commenced, it could not be maintained.

The jurisdiction of this court in this case is limited by the act of February 25, 1889, 25 Stat. 693, c. 236, to the determination of the questions as to the jurisdiction of the Circuit Court.

THE facts in this case are as follows: On March 29, 1881, Joel Wood and William H. Lee, citizens of the State of Missouri, partners as Wood & Lee, obtained a judgment in the Eighth District Court of the parish of East Carroll, Louisiana, against Simon Cohn, a citizen of the State of Louisiana, for $539.25, with interest, for goods sold by them to him on October 30, 1880. On April 2, 1881, S. B. Newman and S. D. Stockman, composing the firm of S. B. Newman & Co., also obtained a judgment in the same court against said Cohn for

$24,282.16, which judgment, subject to a credit of $5452, the proceeds of certain attachment proceedings accompanying the action, was duly assigned to Wood & Lee. Newman and Stockman were both citizens of Louisiana. On November 30, 1885, Wood & Lee filed their bill in equity in the Circuit Court of the United States for the Western District of Louisiana against Simon Cohn, his wife Fannie Cohn, and his wife's mother, Henrietta Steinhardt, all citizens of Louisiana, the purpose and object of which was to set aside as fraudulent a judgment in favor of Mrs. Cohn against Simon Cohn, and to subject certain property standing in the name of Mrs. Steinhardt, and alleged to be the property in fact of Simon Cohn, to the payment of these judgments. On July 11, 1882, the Mississippi Mills, a corporation organized under the laws of the State of Mississippi, obtained a judgment in the Eighth District Court of the parish of East Carroll, Louisiana, against Simon Cohn, for $751.46. On July 5, 1883, it commenced in that court a suit of substantially the same nature as that commenced by Wood & Lee; this suit was duly removed to the Circuit Court of the United States for the Western District of Louisiana. After such removal, and on October 29, 1886, these cases were consolidated by an order of the Circuit Court, and from that time on they proceeded as one case. Pleadings having been perfected and proofs taken, the consolidated case was submitted to the Circuit Court, and on July 18, 1889, a decree was entered dismissing the bills of plaintiffs for want of jurisdiction. To reverse this decree of dismissal, appellants have brought their appeal to this court.

*Mr. Edward Cunningham, Jr.*, for appellants.

No appearance for appellees.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

No appearance has been made for the appellees in this court, and we should be at a loss to know the grounds for the decision

of the Circuit Court were it not for the opinion of District Judge Boarman, before whom the case was heard, 39 Fed. Rep. 865, which gives his reasons for entering the decree of dismissal.

It may be premised that no objection arises on account of the amount in controversy in either suit, for at the time these suits were brought the Circuit Court had jurisdiction where such amount exceeded the sum of five hundred dollars. Rev. Stat. § 629. Nor can there be any doubt of the jurisdiction of this court over the appeals of either appellant, treating them as separately appealing, because the case in the trial court involved the question of the jurisdiction of that court. 25 Stat. 693, act of February 25, 1889, c. 236. The decision of the Circuit Court was to the effect that no relief could be had in equity, because under the practice prescribed in that State there was a remedy by an action at law. We quote from the opinion:

"If it be true that Cohn, notwithstanding said purchases, transfers, etc., were ostensibly made by Mrs. Steinhardt, and the title of record is in her name, is the real owner of the property now sought to be subjected to the payment of Cohn's debts, the complainants have a well-known and adequate remedy at law to make the property liable for their claims.

"The issues made up by the pleadings and evidence involve fundamentally the title to, or the real ownership of, the property in question. The complainants charge that Cohn, in fact and law, is the owner thereof. The defendants deny his ownership, and contend that the sales were real sales to Mrs. Steinhardt. Such issues are not determinable in this court in equity proceedings. . . . In the view and purpose of complainants' charges, Cohn now owns the property, and they have not presented or sought to present such an action as should be heard in equity, and it is ordered that their suit be dismissed."

We are unable to concur in these views. It is well settled that the jurisdiction of the Federal courts, sitting as courts of equity, is neither enlarged nor diminished by state legislation. Though by it all differences in forms of action be abolished;

though all remedies be administered in a single action at law; and, so far at least as form is concerned, all distinction between equity and law be ended, yet the jurisdiction of the Federal court, sitting as a court of equity, remains unchanged. Thus, in *Payne* v. *Hook*, 7 Wall. 425, 430, it was said, citing several cases: "We have repeatedly held 'that the jurisdiction of the courts of the United States over controversies between citizens of different States cannot be impaired by the laws of the States, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power.' If legal remedies are sometimes modified to suit the changes in the laws of the States, and the practice of their courts, it is not so with equitable. The equity jurisdiction conferred on the Federal courts is the same that the High Court of Chancery in England possesses; is subject to neither limitation or restraint by state legislation, and is uniform throughout the different States of the Union." And in *McConihay* v. *Wright*, 121 U. S. 201, 205 : "The contention of the appellants, however, is that by the statute of West Virginia the complainant might have maintained an action of ejectment. Reference is made, in support of this contention, to the West Virginia Code of 1868, c. 90, to show that an action of ejectment in that State will lie against one claiming title to or interest in land, though not in possession. Admitting this to be so, it, nevertheless, cannot have the effect to oust the jurisdiction in equity of the courts of the United States as previously established. That jurisdiction, as has often been decided, is vested as a part of the judicial power of the United States in its courts by the Constitution and acts of Congress in execution thereof. Without the assent of Congress that jurisdiction cannot be impaired or diminished by the statutes of the several States regulating the practice of their own courts." See also *Scott* v. *Neely,* 140 U. S. 106; *Cates* v. *Allen*, 149 U. S. 451, in which a state statute, extending the jurisdiction of equity to matters of a strictly legal nature, was held inapplicable to the Federal courts, and unavailing to vest a like jurisdiction in such courts, sitting as courts of equity.

So, conceding it to be true, as stated by the learned judge,

that the full relief sought in this suit could be obtained in the state courts in an action at law, it does not follow that the Federal court, sitting as a court of equity, is without jurisdiction. The inquiry rather is, whether by the principles of common law and equity, as distinguished and defined in this and the mother country at the time of the adoption of the Constitution of the United States, the relief here sought was one obtainable in a court of law, or one which only a court of equity was fully competent to give.

In order to determine this question, a further statement is necessary of the facts disclosed in and the exact relief sought by these bills. After the allegations in respect to the judgments, the bills aver that in 1879 and 1880 the defendants entered into a conspiracy to defraud and despoil the creditors of Simon Cohn; that he proceeded to carry out this scheme by purchasing from plaintiffs and others a large amount of goods, on credit, and selling them for cash at a great sacrifice, and these moneys he had so placed as to be beyond the reach of his creditors. The means by which these goods were received and disposed of are stated at some length. Further, and, as is alleged, in carrying out this scheme, he fraudulently procured his wife to institute a suit for moneys, when none was due from him to her, and he not defending, to recover a judgment for $4000 as her separate estate, by which any property in his name could be sold and the title transferred to his wife. Also, he executed a mortgage for $5800 on certain real estate, to wit, six lots in the town of Providence and a fine brick storehouse thereon, in favor of his brother, a mortgage which was in fact without any consideration. Thereafter, his brother foreclosed such mortgage, and on foreclosure the property was purchased in the name of Mrs. Steinhardt, Simon Cohn's mother-in-law. Other property described was purchased in the name of Mrs. Steinhardt, although the money paid therefor was furnished by Cohn, and was part of that realized from the cash sales heretofore mentioned. All his property had in fact been placed in the name of Mrs. Steinhardt, and he was carrying on business ostensibly in her name, though all the while the real owner. The prayer of the bills is, that

the judgment in favor of the wife be set aside as fraudulent; that the defendant, Simon Cohn, be declared the real owner of the properties described; and that they be taken possession of by a receiver, and sold to satisfy the judgments.

It will be seen from this statement that these bills were substantially creditors' bills, to subject property — in fact, the property of the defendant, but fraudulently standing in the name of a third party — to the payment of those judgments, and to remove a fraudulent judgment which might stand as a cloud upon the title of the debtor. Such suits have always been recognized as within the jurisdiction of equity. In 2 Beach on Modern Equity Jurisprudence, § 883, it is said: "A court of equity will aid a judgment creditor to reach the property of his debtor by removing fraudulent judgments or conveyances or transfers which defeat his legal remedy at law." See also 3 Pomeroy's Eq. Juris., § 1415; *Dockray* v. *Mason*, 48 Maine, 178; *Edgell* v. *Haywood*, 3 Atk. 352, 357; *Burroughs* v. *Elton*, 11 Ves. 29, 33; *Hendricks* v. *Robinson*, 2 Johns. Ch. 283; *Edmeston* v. *Lyde*, 1 Paige, 637; *Beck* v. *Burdett*, 1 Paige, 305; *Cuyler* v. *Moreland*, 6 Paige, 273; *Feldenheimer* v. *Tressel*, 6 Dakota, 265. It follows from these considerations that the Circuit Court erred in dismissing these bills for want of jurisdiction.

It was further held by the Circuit Court, as appears from the opinion referred to, that Wood and Lee were not entitled to relief by reason of the Newman judgment, on the further ground that Newman and Stockman, being citizens of Louisiana, could not have sued in the Federal court; and that Wood and Lee, their assignees, were equally disabled. This, by reason of that clause in the first section of the act of March 3, 1875, 18 Stat. 470, c. 137, conferring jurisdiction on the Circuit Courts, (which statute was in force at the time of the commencement of this suit,) which reads as follows: "Nor shall any Circuit or District court have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made, except in cases of promissory notes negotiable by the law merchant and bills of exchange."

This question has been settled adversely to the appellants, and in accord with the ruling of the Circuit Court, by the case of *Walker* v. *Powers*, 104 U. S. 245, 248. That case arose under the same section. That presented as this, a suit by the assignee of a judgment to set aside, as fraudulent, certain sales and conveyances of real estate made by the judgment debtor, and to subject it to the payment of the judgment. There were two judgments, and after disposing of one Mr. Justice Miller, speaking for the court, said, as to the other: " In reference to the judgment in favor of Chester, on which, as his assignee, Whittemore asks relief, it is urged as ground of demurrer, that Chester being a citizen of the same State with Stewart, his assignee is incapable of prosecuting this suit in a Federal court. It was brought in 1876, and the question here raised must be decided by a construction of the act of March 3, 1875, c. 137, 18 Stat. 470. . . . That judgment is, then, the foundation of his suit in the Circuit Court. It is a cause of action which he holds by assignment from a party who cannot sue in that court. Without this cause of action he has no standing in court, and has no right to ask the court to inquire into the other matters alleged in the bill. It is as much the foundation of his right to bring the present suit as if it were a bond and mortgage on which he was asking a decree of foreclosure. See *Sheldon* v. *Sill*, 8 How. 441. . . . The Circuit Court, if the judgment of Chester had been there recovered, might have jurisdiction of the case to remove obstructions to the enforcement of its own judgment, no matter who for the time being was its owner. But where a party comes for the first time in a court of the United States to obtain its aid in enforcing the judgment of a state court, he must have a case on which the former court can entertain original jurisdiction. *Christmas* v. *Russell*, 5 Wall. 290."

It may be that, when the appellants obtain the relief they seek in respect to the judgments rendered in their own favor in the Federal court, and the property of the defendants has been sold by a receiver or otherwise, the owners of this New-man judgment may intervene in the case and apply for a share of the funds. *Payne* v. *Hook*, 7 Wall. 425, 432. But

that is a question which need not now be considered, and is very different from the question here presented, of the right of the assignees of this state judgment to maintain in the Federal courts an independent suit for its enforcement.

The act of February 25, 1889, which gives this court jurisdiction, 25 Stat. 693, c. 236, provides that " in cases where the decree or judgment does not exceed the sum of five thousand dollars, the Supreme Court shall not review any question raised upon the record, except such question of jurisdiction." It follows, therefore, that in this case our inquiry must stop with that question of jurisdiction, which we have thus determined.

*The decree of the Circuit Court dismissing these bills for want of jurisdiction must be reversed, and the consolidated case will be remanded to that court for further proceedings in accordance with law.*