### THE MACCABEES v. CITY OF NORTH CHICAGO et al.

#### No. 7609.

Circuit Court of Appeals, Seventh Circuit.
Jan. 13, 1942.

Rehearing Denied Feb. 13, 1942.

Arvid B. Tanner and Bowen E. Schumacher, both of Chicago, Ill. (Tanner & Struckmann and Packard, Barnes, Schumacher & Gilmore, all of Chicago, Ill., of counsel), for appellant.

J. F. Dammann, Geo. Fiedler, Harold J. Tallett, Frank T. O'Brien, and Lionel A. Mincer, all of Chicago, Ill. (Wham & O'Bri-

en and Wilson & McIlvaine, all of Chicago, Ill., of counsel), for appellees.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, a Michigan corporation, appeals from a decree dismissing for want of equity its amended complaint against the City of North Chicago, Gust F. Santry, Maryland Casualty Company, and certain individuals, who are the mayor, ex-officio president of the Board of Local Improvements of the City of North Chicago, the members of the city council, the city treasurer, city clerk and city attorney.

The complaint, filed August 25, 1934, shows affirmatively the requisite jurisdictional amount and the necessary diversity of citizenship. Since the appeal is from the dismissal of this complaint, we must accept as true the allegations of the complaint and determine whether they state any cause of action cognizable in the federal courts.

In 1924 the City of North Chicago decided to build a sewer and to pay for it by special assessment, as provided in the Local Improvement Act of Illinois, Chap. 24, Article 84, Ill.Rev.Stat.1941. Accordingly, the city filed the necessary petition therefor in the County Court of Lake County, Illinois, the assessment roll was spread, and the County Court duly entered an order confirming the assessment. Immediately thereafter, the Board of Local Improvements advertised for bids and several months later accepted the $15,000 bid of Gust Santry for the construction of the gravity flow sewer.

The contract between North Chicago and Santry provided that on the last day of each month during the progress of the work the city should cause its engineer to make estimates of the amount and value of the work actually constructed and in its permanent place. Upon the Board's approval of the estimates it was to deliver to Santry vouchers levied against the special assessments to the amount of 85% of the estimated value of said work completed during the previous month. The vouchers were redeemable in bonds payable both as to interest and principal out of the special assessment, as and when collected. Until the work had been fully completed, accepted by the Board, and the acceptance certified and confirmed by the County Court

of Lake County, the city was to retain the remaining 15% of the special assessment as a guarantee against poor workmanship and material.

Pursuant to the contract, Santry as principal and the Casualty Company as surety filed with the city a penal bond conditioned upon contractor Santry's faithful performance of his contract. Santry began the work on June 17, 1924, and finished it August 27, 1924. His work was not a faithful performance of the contract; it deviated greatly from the plans and ordinance, producing a different and inferior sewer. Yet, the city engineer fraudulently and wrongfully submitted as correct to the Board of Local Improvements two partial estimates during the progress of the work and a final estimate upon its completion. With neither inspection nor investigation of the work and with notice and knowledge of this noncompliance, the Board accepted these estimates when presented and, in disregard of its statutory duties, issued to Santry some $13,000 worth of bonds pursuant to the estimates. Without Santry's filing the required maintenance bond in lieu of the 15% reserve, he received in bonds some $1400 out of the reserve fund of $2800+ retained to secure the faithful performance of the contract. These were not the only distributions from the special assessment fund: a special attorney, an inspector, the city engineer, and city attorney received from the fund vouchers or money for alleged services rendered.

On October 1, 1924, after the Board of Local Improvements had accepted the sewer and the work had been covered up, the plaintiff purchased $10,000 par value of the bonds from Hanchett Bond Company. From August 27, 1924, the date of the final completion and acceptance of the sewer, to the present date, the Board of Local Improvements has never caused to be filed in the County Court of Lake County, Illinois, a certificate of completion or noncompletion, although such is their mandatory duty to be performed within 30 days after the completion and final acceptance of the improvement. See Ill.Rev.Stat. c. 24, Art. 84, par. 84, and Blackhawk Const. Co. v. Village of Homewood, 343 Ill. 182, 175 N.E. 427.

In May 1931, at the suggestion of the city attorney and upon his assurance that the city would file its certificate of completion or noncompletion if so directed, the plain-

tiff petitioned the County Court of Lake County so to direct. Although that court entered such an order, the Board refused to obey the ruling. Plaintiff asked for a rule to show cause why the members of the Board should not be held in contempt, but that court denied the motion and set aside its order on the ground that it was a serious matter to hold a public officer in contempt. Since that time, there have been frequent negotiations between the plaintiff, the city and the Casualty Company, but they have failed because they were not conducted in good faith by the city, the Board, and the city attorney.

The sewer to this day serves the public and abutting property owners without cost to them, notwithstanding the deviations from the ordinance. These property owners and the Board are opposed to making the improvement conform to the ordinance and have a personal interest in defeating the assessment. Since 1925 the Board and the city have requested Santry and the Casualty Company to complete the sewer in accordance with the ordinance, but neither Santry nor the Casualty Company have complied with the request.

The plaintiff seeks relief against these actions. It requests an injunction commanding the Board members to cause a certificate of cost for the improvement to be filed and to state whether the improvement conforms with the ordinance; that it be adjudged that the Casualty Bond is breached; that an accounting be had and that judgment be entered in favor of the plaintiff.

At the threshold we are met with the contention that the District Court lacks jurisdiction to entertain plaintiff's complaint. With this contention we do not agree.

■ It appears to be conceded that certain of the rights claimed by the plaintiff exist by virtue of the Illinois statutes, and defendants argue that these statutes contemplate the submission of all questions arising out of the creation and administration of a special or local improvement to a state court of record. Even so, that fact does not prevent plaintiff from seeking the protection of these rights in a federal court. The remedy and the right must not be confused. Although a state statute can neither enlarge the remedial right to proceed in a federal court, Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 497, 43 S. Ct. 454, 67 L.Ed. 763, nor reduce that right,

Mississippi Mills v. Cohn, 150 U.S. 202, 14 S.Ct. 75, 37 L.Ed. 1052; Guffey v. Smith, 237 U.S. 101, 114, 35 S.Ct. 526, 59 L.Ed. 856, still the state created substantive right will be protected by the federal courts if they can give a remedy. In the instant case the District Court was not asked to be "a sort of appellate tribunal over the County Court of Lake County or a super-Board of Local Improvements, or a super-administrative agency." To be sure, if such were the case, it could not and would not exercise jurisdiction. In our case the gravamen of the plaintiff's cause is not the mere existence of an unsatisfied statutory right; it is the manner of the defendants' disregard of these alleged rights which prompts the plaintiff to seek the aid of a federal court of equity in putting to an end the defendants' alleged conspiracy to cheat and defraud. And this relief, from the beginning of Chancery, the courts of equity have been willing to give. Cf. Risty v. Chicago, etc., Ry. Co., 270 U.S. 378, 46 S.Ct. 236, 70 L.Ed. 641; DiGiovanni v. Camden Ins. Ass'n, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47, and Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754.

■ In support of the decree of dismissal, defendants' counsel argue that the May 1931 county court proceeding precludes plaintiff from an injunction directing the members of the Board of Local Improvements to file a certificate of cost and completion, or noncompletion, in that court. The city and its officials and the members of the Board subjected themselves to the process of the county court and defended their case with no intention of being amenable to any adverse decree that the court might issue. Under such circumstances the proceeding was a fraud upon the county court and the defendants can not be heard to say that the pendency of that proceeding defeats plaintiff's right in a federal court. Absent even the fraud, it would be highly questionable whether the abandoned county court proceeding had any effect on the rights of the parties. We are of the opinion that if the District Court, after hearing the case upon the merits, should deem it necessary to issue the injunction, the court may do so in its exercise of equitable powers to "suit proceedings and remedies to the circumstances of cases and formulate them appropriately to safeguard, conveniently to adjudge, and promptly to enforce substantial rights of

all the parties before them." Alexander v. Hillman, 296 U.S. 222, 239, 56 S.Ct. 204, 209, 80 L.Ed. 192. Obviously, the issuance of such an injunction would not be in violation of § 265 of the United States Judicial Code, 28 U.S.C.A. § 379.[1]

■ At most, these characterized jurisdictional objections question the propriety of an exercise of jurisdiction under the pleaded facts. In a sensitive area of concurrent jurisdiction of state and national judiciaries, the federal courts must ever be mindful of the dignity of the states and should refrain from injudicious use of their discretionary authority. But this consideration, strong as it is, does not militate against the federal court exercising its power in this case.

■ The defendants, members of the Board, the city and its officers next make the point that the plaintiff is barred by the five year statute of limitations, Chap. 83, § 16, Ill.Rev.Stat.1941.[2] The argument, however, proceeds upon the theory that plaintiff is suing upon the bonds. If that were so, § 17 of the Limitations Act, Ill. Rev.Stat.1941,[3] would be applicable and the cause would not be barred. The fact is that here plaintiff is suing defendants for violating their statutory duty. In such case the statute cited by defendants does not apply. Roberts v. Village of Lyons, 307 Ill.App. 36, 29 N.E.2d 857.

We have considered all the other contentions of the defendants in support of the decree. Since they do not affect the question of whether plaintiff is entitled to a trial upon the merits, we pass them without discussion.

■ We conclude that the Local Improvement Act was passed to protect the citizens from the uncontrolled and sometimes corrupt activities of their municipal officers in the all too tempting construction of improvements. But the citizens are not the only victims of such conduct. If the allegations of the complaint are true, the defendants would shield themselves behind the very act passed to raise municipal responsibility by supervising conduct. We find nothing to show that the Act is not also to protect third parties from the unconscionable conduct of the city and its citizens. No statutory provision can limit the power of the District Court to prevent fraud and the court may complement the Act with the full powers of equity in order to relieve the fraud if proved.[4]

The case is reversed and remanded with directions to proceed in accordance with this opinion.

It is so ordered.

---

1 "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

2 "Actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued."

3 "Actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within ten years next after the cause of action accrued; but if any payment or new promise to pay shall have been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the said period of ten years, then an action may be commenced thereon at any time within ten years after the time of such payment or promise to pay."

4 Cf. Payne v. Hook, 74 U.S. 425, 19 L.Ed. 260; McConihay v. Wright, 121 U. S. 201, 7 S.Ct. 940, 30 L.Ed. 932; Arrowsmith v. Gleason, 129 U.S. 86, 9 S.Ct. 237, 32 L.Ed. 630; Smyth v. Ames, 169 U.S. 466, 516, 517, 18 S.Ct. 418, 42 L. Ed. 819; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638; Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447, and Park v. Park, 5 Cir., 123 F.2d 370.