TJOFLAT, Circuit Judge:
This appeal presents two questions: whether the constitutional holding of Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), barred the bankruptcy court from litigating the trustee’s action to set aside a fraudulent conveyance of real property and, if not, whether the court erred in denying the defendants a jury trial. The district court, on review, answered the questions in the negative. We affirm.
I.
In early 1977, John Arte Graham, the debtor and one of the appellants here, acquired a garbage business, Fat Daddy’s, Inc., from Stanley Parker. In exchange for the company’s stock, the debtor gave Parker a promissory note for $3,150, to be paid off within three months, and co-signed and guaranteed a .$10,756.90 note that Fat Daddy’s and Parker had given to a local bank.
After he acquired Fat Daddy’s, Inc., the debtor apparently dissolved the company[1] and operated its garbage business as a part of his sole proprietorship, S & L Sanitation. The proprietorship soon experienced severe financial difficulties, however, and the debtor was only able to pay Parker $900 on his $3,150 note. By the summer of 1977 the debtor was forced to shut down his business, including his garbage enterprise, and take a job elsewhere.
Despite this outside employment, the debtor was unable to meet his current obligations, including the overdue Parker note. In time, Parker sued the debtor and took steps to repossess two of his garbage trucks.[2]
While Parker was proceeding against the debtor, the debtor executed a deed transferring rental property that he owned on Sweet Valley Drive, Mableton, Georgia (the “subject property”) to his wife, Carolyn, also an appellant here, for $10. As the bankruptcy court determined, the net “walk-away equity” in this property was between $1,460.60 and $5,086.20. The debtor recorded the deed at the Cobb County courthouse shortly after Parker succeeded in repossessing one of his garbage trucks.
On February 7, 1980, the debtor commenced Chapter 7 bankruptcy proceedings under 11 U.S.C. § 301 (1982). Harry W. Pettigrew, appellee, was designated as trustee-in-bankruptcy and, on June 17, 1980, filed suit against the debtor and his wife in the bankruptcy court[3] alleging that *1385 the debtor had fraudulently conveyed the subject property to his wife in violation of 11 U.S.C. § 544(b) (1982). Section 544(b) gives the trustee the power to avoid any transfer voidable by an unsecured creditor under state or federal law, and the trustee alleged that the debtor’s transfer in this instance was voidable under Ga.Code Ann. § 18-2-22 (1982).[4] The trustee requested that the court declare the transfer null, void, and fraudulent and grant “such other relief as is just and proper.”
In her answer to the trustee’s complaint, the debtor’s wife denied the allegations of the complaint and presented two jurisdictional defenses: The bankruptcy court, for reasons not relevant to the issues before us, lacked jurisdiction over the subject matter and over her person. She also demanded a trial by jury.[5] The court struck her jurisdictional defenses and denied her request for a jury trial.
The court thereafter conducted a bench trial. When the trial commenced, the defendants again questioned the court’s subject matter jurisdiction, this time citing the Supreme Court’s recent decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that Congress’ grant of .jurisdiction to the bankruptcy courts of all bankruptcy matters was unconstitutionally broad. The bankruptcy court concluded that it had subject matter jurisdiction because the Supreme Court had stayed the effect of its decision in Northern Pipeline until December 24, 1982.[6] The case proceeded to trial, and in a final judgment dated December 9, 1982, the court set aside the debtor’s conveyance of the subject property as fraudulent under Ga.Code Ann. §§ 18-2-22(2) and (3).
On January 6, 1983, the debtor and his wife appealed to the district court from the bankruptcy court’s final judgment, citing as error the court’s decision on the merits, and on the jurisdiction and jury trial issues. On June 8, 1983, the district court affirmed, and this appeal followed.
II.
A.
Appellants contend that the bankruptcy court lacked subject matter jurisdiction because the Supreme Court decided in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that Congress’ grant of jurisdiction under 28 U.S.C. § 1471 (1982) to the bankruptcy courts of “all civil proceedings arising under title 11 in or arising in or related to cases under title 11” was unconstitutionally broad. The *1386 Court’s stay of its decision, according to appellants, has no bearing on the case at hand.
Appellants concede that most federal courts have treated the Supreme Court’s stay of its Northern Pipeline decision as rendering the bankruptcy court’s exercise of jurisdiction during the stay period constitutional. See, e.g., Massachusetts v. Dartmouth House Nursing Home, Inc., 726 F.2d 26, 30 (1st Cir.1984); In re Klapp, 706 F.2d 998, 999 n. 1 (9th Cir.1983); Gray v. Snyder, 704 F.2d 709, 711 (4th Cir.1982). See also United States v. Security Industrial Bank, 459 U.S. 70, 74 n. 5, 103 S.Ct. 407, 410 n. 5, 74 L.Ed.2d 235 (1982). They contend, however, that the stay is inapplicable here because the Supreme Court only intended its stay to apply in cases in which the litigants relied on the bankruptcy court’s subject matter jurisdiction. Because they never relied on the bankruptcy court’s jurisdiction, objecting to it at every chance, they reason that the Court’s stay is inapplicable in this case. Appellants support their argument by citing the passage of the. Northern Pipeline opinion which reads: “It is equally plain that retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act’s vesting of jurisdiction in the bankruptcy courts.” 458 U.S. 88, 102 S.Ct. at 2880 (emphasis added by appellants). We are not persuaded by appellants’ argument for two reasons.
First, the passage appellants cite makes it clear that the Court intended to protect parties who had relied on the integrity of the bankruptcy court’s jurisdiction by making its holding prospective only. Id. The Court, however, did not stay the effect of its decision for this purpose. Rather, it stayed the effect of its decision to “afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws.” Id. (emphasis added). Nowhere in the part of the Court’s opinion referring to the stay provision does it appear that the Court intended its stay to apply only to those cases in which the parties relied on — that is, did not object to — the bankruptcy court’s jurisdiction. In fact, if the bankruptcy courts were required to determine in each ease whether the litigants before it were relying on the court’s jurisdiction, the objective of the stay provision, which was to ensure the uninterrupted operation of the bankruptcy laws, would clearly be thwarted.
Second, even if we found the exception to the Court’s stay provision appellants propose exists, it would not apply to the case before us. For although the appellants may not have relied on the bankruptcy court’s jurisdiction, the trustee-in-bankruptcy, who chose to sue the appellants in the bankruptcy court rather than in state court,[7] did rely on the bankruptcy court’s jurisdiction. Indeed, it would be difficult, if not impossible, to imagine a case in which the trustee-in-bankruptcy, having pursued his action in the bankruptcy court, could be found not to have relied on that court’s jurisdiction.[8] Accordingly, we hold that the bankruptcy court had jurisdiction to litigate the trustee’s fraudulent conveyance action while the Northern Pipeline decision was stayed. This brings us to appellants’ second claim, that they were entitled to a jury trial.
B.
The trustee-in-bankruptcy brought suit against the appellants under 11 U.S.C. § 544(b) (1982). That section gives a trustee-in-bankruptcy the power to avoid any transfers that unsecured creditors could have avoided under federal or state law. The trustee-in-bankruptcy here invoked Ga. Code Ann. § 18-2-22, which renders null and void conveyances made by debtors to *1387 defraud or delay their creditors. Thus, the substantive dimensions of the trustee’s claim were provided by state law. Federal law, however, determined whether appellants were entitled to a jury trial because the trustee sued in federal court. Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 610-11, 9 L.Ed.2d 691 (1963); Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 537-39, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958). Had he brought his action in state court, state law would have controlled the jury trial issue.
Appellants’ right to a jury trial had two potential sources. The right could have arisen from the seventh amendment to the U.S. Constitution or from the statute which authorized the trustee’s suit. Sibley v. Fulton DeKalb Collection Service, 677 F.2d 830, 832 (11th Cir.1982). We first address appellants’ right to a jury trial under the seventh amendment; then we consider whether the Bankruptcy Act of 1978 (“Bankruptcy Code”) provided such a right.
The seventh amendment states: “In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved____” In Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 446-47, 7 L.Ed. 732 (1830), the Court explained the parameters of this right:
The phrase “common law,” found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence____ By common law, [the Framers of the Amendment] meant ... not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered .... In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever might be the peculiar form which they may assume to settle legal rights.
(Emphasis in original); see also Curtis v. Loether, 415 U.S. 189, 192-93, 94 S.Ct. 1005, 1007-08, 39 L.Ed.2d 260 (1974). This passage makes it clear that whether a party is entitled to a jury trial depends on whether the issue before the court is “legal” or “equitable.” To answer this question, a federal court must examine both the historical treatment of the issue and the nature of the remedies sought. Sibley v. Fulton DeKalb Collection Service, 677 F.2d 830, 833 (11th Cir.1982); Johnson v. Gardner, 179 F.2d 114, 116-17 (9th Cir.1949), cert. denied, 339 U.S. 935, 70 S.Ct. 661, 94 L.Ed. 1353 (1950). See generally 5 J. Moore, Moore’s Federal Practice HIT 38.01 — .38 (2d ed. 1984).
Appellants contend that the English tradition was to try all fraudulent conveyance actions in the law courts; thus, they are entitled to a jury trial in this action. Contrary to appellants’ assertion, however, the English equity and law courts exercised concurrent jurisdiction over fraudulent conveyance actions; the law courts tried those in which the creditor sought legal remedies and the equity courts tried those in which he sought equitable remedies. See Hobbs v. Hull, 1 Cox Ch. 445, 29 E.R. 1242 (1788); see also Glenn, The Law of Fraudulent Conveyances, §§ 96, 98 (1931); 2 Pomeroy’s Equity Jurisprudence, § 968 (4th ed. 1918). Drawing on this tradition, the courts of this country have long held that an action by a creditor or trustee-in-bankruptey to set aside a fraudulent conveyance is an equitable action, see, e.g., Mississippi Mills v. Cohn, 150 U.S. 202, 207, 14 S.Ct. 75, 77, 37 L.Ed. 1052 (1893); Duncan v. First National Bank, 597 F.2d 51, 55 (5th Cir.1979);[9] Damsky v. Zavatt, 289 F.2d 46, 53 (2d Cir.1961); Mission Bay Campland, Inc. v. Sumner Financial Corp., 72 F.R.D. 464, 466 (M.D.Fla.1976), while an action by a creditor or trustee-in-bankruptcy seeking money damages is an action at law. See *1388 Whitlock v. Hause, 694 F.2d 861 (1st Cir.1982); Williams v. Collier, 32 F.Supp. 321, 323 (E.D.Penn.1940).
In the instant case, the trustee-in-bankruptcy requested that the court declare the subject conveyance null, void, and fraudulent and grant “such other relief as is just and proper.” Although he did not specifically request the court to set aside the conveyance, the trustee clearly anticipated such equitable relief. His traditional prayer that the court grant such relief as it deemed “just and proper” was a direct appeal to the court’s equity power to fashion any remedy necessary to satisfy the ends of justice. See Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944). Moreover, the legal remedy of damages was neither requested nor particularly appropriate because the property conveyed, real property, was not a depreciating asset whose value when returned to the trustee would be substantially less than its value at the time of the subject conveyance. The trustee never presented any evidence as to the amount of damages suffered as a result of the debt- or’s conveyance (other than incidentally to establish that the property conveyed had some value) from which a jury could have fashioned a monetary award because it was obvious that the debtor’s wife could not have satisfied a money judgment. In sum, the seventh amendment did not grant appellants the right to a trial by jury.
We still must determine, however, whether the Bankruptcy Code granted appellants the right to a jury trial. First, it is clear that the Code did not explicitly grant the parties to a 544(b) action the right to a jury trial. The only provision of the Code which might have provided such a right is section 241, 28 U.S.C. § 1480(a), which states:
[Tjhis chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September SO, 1979.
(Emphasis added.)
September 30, 1979 is the day before which most of the provisions of the Bankruptcy Code went into effect. Thus, if the Bankruptcy Act of 1898 (“Bankruptcy Act”) would have granted appellants the right to a jury trial, they would be entitled to one under the Bankruptcy Code.
Under the Bankruptcy Act, a trustee-in-bankruptcy seeking to avoid a fraudulent transfer avoidable by unsecured creditors under state law would have proceeded under section 70e. As with section 544(b) of the Bankruptcy Code, section 70e conferred no explicit right to a jury trial; nor did any other provision of the Bankruptcy Act confer such a right. The right to a jury trial, therefore, was determined, as it is now, by the forum entertaining the action.
As is the case under the Bankruptcy Code, the trustee could have brought an action under the Bankruptcy Act to avoid a fraudulent conveyance in either federal or state court.[10] In fact, the only difference in proceeding under the Bankruptcy Act was that, if the trustee chose to pursue the action in federal court, he was required to file suit in the district court, rather than in the bankruptcy court, as the Code provided for in this case.[11] That prior law allowed the trustee to pursue the action in the district court, rather than in the bankruptcy court, had no effect on the jury trial issue, however, because in either forum the right to a jury trial was determined by the seventh amendment or the applicable feder *1389 al statutory provision. Because, as we have previously noted, there was no provision under the Bankruptcy Act authorizing a jury trial in section 70e actions, and because the seventh amendment did not require a jury trial, no right to a jury trial existed in section 70e actions. Consequently, 28 U.S.C. § 1480(a) does not require that actions now brought by trustees under section 544(b) be tried to a jury.[12]
AFFIRMED.

. We draw this conclusion from the findings of fact contained in the bankruptcy court’s final judgment; the court found that the debtor operated Fat Daddy’s, Inc. "as a part of his sole proprietorship: S & L Sanitation." The debtor does not contest this fact.

. The bankruptcy court’s findings of fact indicate that this is what occurred, but the record does not inform us as to the nature of the lien Parker may have had on the trucks.

. 28 U.S.C. § 1473(c) (1982) provides that the trustee may commence proceedings under section 544(b) in the "bankruptcy court for the district where the State or Federal court sits in which ... [a creditor could] have commenced *1385 an action” against the debtor had bankruptcy not supervened. The bankruptcy court's jurisdiction was concurrent with that of the state courts. See 28 U.S.C. §§ 1471(b) and (c) (1982) (in civil proceedings arising under Title 11 or arising in or related to cases under Title 11 the bankruptcy court’s jurisdiction was original, but not exclusive).

. Ga.Code Ann. § 18-2-22 provides:
The following acts by debtors shall be fraudulent in law against creditors and as to them shall be null and void:
(1) Every assignment or transfer by a debt- or, insolvent at the time, of real or personal property or choses in action of any description to any person, either in trust or for the benefit of or on behalf of creditors, where any trust or benefit is reserved to the assignor or any person for him;
(2) Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description had or made with intention to delay or defraud creditors, where such intention is known to the taking party; a bona fide transaction on a valuable consideration, where the taking party is without notice or ground for reasonable suspicion of said intent of the creditor, shall be valid; and
(3) Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor who is insolvent at the time of the conveyance.

. There is some question whether the debtor later joined in his wife’s demand for a jury trial. We give him the benefit of the doubt and assume that he did.

. The Supreme Court originally stayed the effect of its judgment until October 4, 1982, Northern Pipeline, 458 U.S. at 88, 102 S.Ct. at 2880, but later extended its stay until December 24, 1982, Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 459 U.S. 813, 103 S.Ct. 199, 200, 74 L.Ed.2d 160 (1982).

. See supra note 3.

. The only case in which such an argument might be made is where the trustee had also filed suit in state court, and that suit was nearing conclusion.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

. Section 70e provided that: "[A]ny State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction.”

. Although the local rules promulgated by the U.S. District Court for the Northern District of Georgia, effective December 25, 1982, provided that the trustee would continue to file section 544(b) actions in the bankruptcy courts, the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. 98-353), enacted by Congress on July 10, 1984, provides that such actions are to be commenced in the district courts. See section 102 amending 28 U.S.C. § 1409 (1984).

. We reject any suggestion in either of the parties’ briefs that Congress intended, by virtue of § 1480(a), that the court undertake a determination of the parties’ right to a jury trial in all of the forums in which the trustee could have possibly brought suit under the Bankruptcy Act, for example, the right to a jury trial in the various state courts in which the trustee could have sued. We conclude that, by enacting § 1480(a), Congress intended to ensure only that any action brought in the federal courts under the Bankruptcy Act that would have been tried to a jury must still be tried to a jury when brought in either the bankruptcy court or district court under the Bankruptcy Code.