## NATIONAL FIRE INS. CO. v. LLEWELLYN et al.

No. 19297. Opinion Filed Feb. 18, 1930.

Rehearing Denied April 15, 1930.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

T. T. Varner, for defendants in error.

HALL, C. This was an action for a recovery on a policy of fire insurance. The plaintiff prevailed. Only two questions are present in this appeal: (1) Was the contract of insurance in existence before the loss? (2) To what extent or under what conditions may an insurance agent, even with certain express authority from his company, write insurance on his own property?

Cora Llewellyn and J. H. McBee were local agents of the National Fire Insurance Company of Hartford, Conn., for the purpose of writing and issuing policies of fire insurance. The general agent of this fire insurance company, as an inducement to the acceptance of the agency by Llewellyn and McBee, gave them authority to execute policies of insurance on their own property. This is expressly denied by the general agent, but testified to by both Cora Llewellyn and J. H. McBee. They testified that Lund, the general agent, authorized them to issue the policies of insurance, apparently in the usual way. The usual way being that these agents or either of them would issue a policy of insurance and bind the company from the time of the issuance of the policy. These persons, McBee and Llewellyn, issued numerous policies of insurance on their own property, with this company as the insurer. No objection whatever was made by the company or anybody in its behalf to the issuance of these numerous policies. A fair sample of the acceptable nature of these transactions between the parties is reflected in the following letter from the general manager of the insurance company, as follows:

"September, 1922.
"McBee & Llewellyn, Agents,
"Poteau, Oklahoma.

"Re: No 540877, J. H. McBee.
"Gentlemen:

"Replying to your valued favor, of recent date, we wish to advise that the above numbered daily report was duly received, and has been passed to our approved file.

"We appreciate the favor of this desirable business, however, wish to advise that we do not acknowledge receipt of each and every daily report inasmuch as that procedure would entail too much clerical work.

"You may rest assured that if any risk does not have our approval, or if the daily report is not received, your office will be promptly advised to that effect.

"Again thanking you for the favor of your own desirable business, we are,

"Yours truly,
'C. O. Talmage Manager.

"P. S. Nothing pays like insurance—Write it in the Columbia!"

(The Columbia was an underwriting agency for defendant.)

Another letter antedating the above communication, regarding the matter of these agents' insuring their own property, is as follows:

"June 14, 1921.
"McBee and Llewellyn,
"Poteau, Okla.
"Gentlemen:

"I enclose six copies of the builders' risk form to be used in writing the policy on your building. The rate will be 60 cents per $100 of insurance for three months. For tornado policy, strike out the lightning and electrical exemption clauses in the form. Use the mercantile policy (white) for fire and the regular tornado policy (pink) for the wind. Trusting this will enable you to get the policy out in good shape, and that the home office will be glad to point out any errors, in case of any, I am,

"Yours very truly,
' Jno. G. Lund, State Agt.

"All daily reports and indorsements must go through the Oklahoma Audit Bureau, Oklahoma City. This does not apply to farm business, which goes direct to the Omaha office."

In July, 1921, Cora Llewellyn, defendant in error, was the owner of a building in the town or city of Poteau, which building was used for a garage. On the 23rd day of that month and year she issued a policy of insurance, with this defendant company as insurer, insuring this building against windstorm and tornadoes. The premium was accepted and no objection was made to the policy. On the 4th day of September, 1923, she wrote another policy of insurance with said company to insure the same property for the sum of $5,000 against loss by fire. It appears that the premium was paid on that policy and no objection was made by the company. On September 4, 1924, that policy expired, and she wrote another policy with this same company (plaintiff in error), the amount of which was $5,500, and its duration was for a term of one year. That policy involves the controversy in this action. On October 2nd following, the improvements described in this policy of insurance were damaged by fire to the extent of $2,448.53. There is no controversy as to the amount of the damage.

The plaintiff Cora Llewellyn testified that immediately thereafter, that is, on the day of the date of the policy, or the following day, she mailed a daily report disclosing this transaction to either the company at Omaha, Neb., or to the Oklahoma Audit Bureau, which was the proper place to mail reports of that nature. Her testimony in this connection is not very convincing, but that question was for the jury. She testified that she used one of the self-addressed envelopes furnished her by the company in mailing this report. The premiums on all the other policies of insurance had been paid in regular order by plaintiff. At the time the loss was sustained to the property involved in this action, the premium on this policy had not been paid. Plaintiff explained that omission by a provision in the contract which provided these insurance agents were entitled to 45 days after the end of the month in which the policy was issued in which to make remittances to the company.

Of course all, or practically all, of plaintiff's testimony was denied by defendant's witnesses, except the fact of the issuance of the prior policies covering this particular property damaged by fire, and the issuance of the other policies of insurance covering other property at various times between June, 1921, and September, 1924. Mr. Lund, the state agent, testified in this connection that he only authorized the plaintiff and her partner, J. H. McBee, to write insurance on their own property and submit the policies to the company for approval. The company's officers and agents, and also employees of the Oklahoma Audit Bureau, testified that the daily report of the issuance of this policy was never received, or at least it could not be located in their respective offices.

The case was tried to a jury, and therefore these matters concerning which the testimony was materially conflicting were wholly within their province. The jury by its verdict evidently accepted plaintiff's testimony to the exclusion of the testimony introduced by defendant, and found, as a matter of fact, that the general agent did, in a general way, at least, authorize plaintiff to issue policies of insurance covering her own property, and did find that she issued the particular policy and regularly mailed the daily report thereof to either the company

or to the Oklahoma Audit Bureau. That finding of the jury entirely disposes of the contention of defendant that the policy of insurance was not in fact issued.

The other and outstanding issue in the case is as follows: Was authority expressly given to these local agents, McBee and Llewellyn, at the time of their appointment or prior to the issuance of the policy in question, to write insurance on their own property, and without condition or the necessity of reporting same to the company for acceptance and approval? Or, conversely, was there a condition placed on such authority requiring the acceptance and approval of such policies as might be written by said agents on their own property before the same became effective?

The legal question presented is a difficult one. Giving the testimony of plaintiff and her witness McBee its full force, the authority of the general agent went no further than to authorize them in a general way to write or issue policies of insurance on their own property. In this connection, the plaintiff testified as follows:

"At the time Mr. Lund was there, we discussed this insurance question in various ways; in fact, it was rather new to me. We stated to him that, owing to the fact that we had a great deal of property of our own to insure, that we would not be interested in the agency unless we could write our own insurance; in that way we would be interested, and he told us that the business would be appreciated on both the farm and town property." -

It might have been their understanding that these agents were to have absolute and unqualified authority to issue without condition binding policies of insurance on their own property, but a definite agreement to that effect is lacking. For this authority we must look to the agreement in connection with the course of conduct and subsequent events, such as the issuance of policies of insurance on this and other property belonging to plaintiff, and must look to the letters dispatched from the company to the agents which we have set forth or outlined in preceding paragraphs of this opinion.

Were it not for the fact that, for a considerable time prior to the issuance of the policy here in controversy these agents had written numerous policies of insurance on their own property with this same company, and that previous to the issuance of the policy in question had issued two policies covering the exact property on which the policy in question was issued, we would conclude that the general authority granted

these agents by the company to write policies of insurance on their own property would be insufficient until there was some character of ratification or subsequent acquiescence in the act. This is said upon the well-known and well-founded principle that the very policy and proprieties of the law prevent the agent or trustee from acting for himself in a matter where his interest conflicts with his duty to his principal, without the express consent of his principal freely given after full knowledge of every matter given to the agent which might affect the principal. 21 Ruling Case Law, pp. 827, 829, and cases therein cited. In applying this principle to a matter involving the sale of property by a principal in which his agent is a purchaser, the rule is illustrated in 21 R. C. L. 830, as follows:

"The doctrine is not based on the idea that the transaction is necessarily an injury to or a fraud upon the principal, but on the idea of closing the door to temptation to fraud and keeping the agent's eye single to the rights and welfare of his principal. And the interdiction is enforced with a strong hand in the courts of justice. The principle is one of prevention, not remedial justice, which operates therefore, however fair the sale may have been—however free from every taint of moral wrong."

The rule as applied to policies of insurance is more definitely stated in 32 Corpus Juris, p. 1071, sec. 149, as follows:

"In accordance with the general rules of agency, an insurance agent must not, **except with the company's knowledge and consent,** assume any duties or enter into any transaction concerning the subject-matter of his agency, in which he has individual interests, adverse to those of the company. As between himself and the company his acts will not be binding where they are in his own interest and contrary to the interests of the company for which he has attempted to act, **and unless he acts with the company's knowledge and consent,** he cannot bind it, by issuing or securing a policy to himself, or in which he is personally interested, although the company may become bound by ratification."

The rule is well stated in the second paragraph of the syllabus of a case relied on by counsel for plaintiff in error and quoted in full in their brief, which is the case of Weatherholt v. National Liberty Ins. Co. (Ky.) 265 S. W. 311, in which case it was held:

"Public policy forbids one to enter into contract with himself as agent for another, without acquiescence or ratification of principal."

Fully recognizing this principle, the opposite of which would be contrary or antag-

onistic to the policy of the law and even of morals, yet there is in this case a sufficient acquiescence and a sufficient revelation to the principal of the facts, and a sufficient acceptance by the company to bind said company in this policy of insurance. It must be observed that the language of the courts and of the text in restricting the authority of an agent to insure his own property in the company of his principal, is to the effect that the acts are voidable unless the agent acts with the company's knowledge and consent; that is, unless the company is apprised of all the essential facts in the case either at or prior to the time of the issuance of the policy. For example, a case relied on by plaintiff in error, with some considerable assurance, is Muncey v. Security Insurance Co. (Idaho) 252 Pac. 870, in which it was held in the first and second paragraphs of the syllabus as follows:

"1. Where an insurance agent himself is an applicant for insurance, the company is not bound or obligated, unless, being fully informed of facts, company accepts risk."

"2. In an action on fire policy written by agent on his own property, offer of proof, showing only that insurer had asked for and desired all of agent's insurance, held, properly rejected, in that it failed to show insurer had accepted risk."

The opinion in that case is brief and to the point, and in discussing the issues, the court said:

"Nowhere in this offer of proof, or at any other place in the record, does it appear that appellants offered to prove any more than that more of Muncey's business had been requested by the company and that they desired all of his insurance they could have. **It does not appear in the record or in the offer of proof that appellants attempted or offered to prove that the company ever had knowledge of the nature or kind of risk that Muncey stated he was going to give them in this particular policy, or that the company had ever agreed to accept or accepted this risk prior to the writing of the policy or at any time. Under the above rule there must have been acceptance by the company,** and herein no acceptance was shown or offered to be shown. The mere fact that the company asked for and desired all of appellants' insurance it could have does not affect the rule, and therefore the proof offered was properly rejected. Weatherholt v. Nat. Liberty Co., supra." (Emphasis ours.)

In the case at bar, the defendant had knowledge of the nature of this risk, because they had already issued two policies of insurance on this property; one policy being for the year just preceding the issuance of the policy in question. The company accepted the premiums, and it must have known the nature of the risk and the character and kind of property, else during this period of one year it would have canceled or made some objection to the risk.

Instead of the present policy being technically a renewal, the policy was increased in the sum of $500. That is, from $5,000 to $5,500. The plaintiff testified that the property was of reasonable value of about $20,000. No attempt was made to successfully dispute that testimony. Furthermore, it does not appear to the writer that the increase of the amount of policy by one-tenth should be a decisive factor in the case. It is well known that, under contracts of insurance, an assured can only collect the amount of the damage sustained to the property. At most, it varies from the total value of the property to a percentage of its value.

It is the contention of plaintiff in error that the company was not bound until they actually received this report showing the execution of this policy, and not then until it subsequently ratified the act. Without deviating from the principle announced in all the cases cited by plaintiff in error and the salutary rule announced in the foregoing paragraphs, we cannot accept their theory that subsequent ratification was necessary in this case. The risk on the property involved in the present case was no different on the 4th day of September, the day the old policy expired, than on the previous day on which it was in full force and effect. The risk, however, was different in this respect: it was increased ten per cent., with a ten per cent. increase of premiums on property which the testimony indicated had a value of nearly four times the amount of the policy of insurance. The insurance company being in possession of these facts, the rule sternly requiring the company's knowledge and consent and an acquiescence in the act of the agent was complied with.

This principle is well illustrated by the decision in the case of Fulkerson v. National Union Fire Insurance Co., 291 Fed. 784, in which case in the second paragraph of the syllabus it was said:

"If a principal, with sufficient definiteness and certainty, authorizes an agent to execute a contract between them, it is an offer by the principal to the agent, accepted by the latter by execution of the contract imposing the obligations of the contract upon both if, and when, acceptance is by the agent communicated to the principal."

In view of the previous agreement and transaction with these parties which we have fully adverted to, when the agent, Mrs. Llewellyn, executed this policy of insurance and thereafter placed in the mails a letter

276

containing the daily report or an abstract of the policy of insurance, addressed to the company or the company's designated agent, the Oklahoma Audit Bureau, the insurance company accepted this risk.

This principle was adhered to by the Kansas Court of Appeals in the case of Bank of Glasco v. Springfield Fire & Marine Ins. Co. (Kan.) 49 Pac. 329, in which it is held that:

"The fact that the agent of the insurance company was, at the time of his appointment and at the time of the transaction in controversy, also the agent of, a small stockholder in, and one of the managing officers of, the assured, and his appointment was made with full knowledge of such relations, and no fraud, deception, or concealment was used, is not sufficient to relieve the insurance company from being bound by the acts and knowledge of such agent."

Another proposition is urged, to wit, the lack of proper testimony showing that the plaintiff had an insurable interest in the property. That contention is destitute of merit for the reason that defendant's whole defense was strung around the proposition and fact that defendant not only had an insurable interest in the property, but owned the property. That fact was affirmatively alleged in the pleadings of both the plaintiff and the defendant.

The act of an agent in dealing with himself in matters adverse to his principal, is enjoined by common sense and honesty, as well as law. However, as we have stated, this rule has certain recognized exceptions, within which falls the present case. We appreciate the fact that the question here is a close one, but its margin is sufficient to warrant an affirmance of the judgment.

For the reasons herein stated, the judgment of the trial court is hereby affirmed.

BENNETT, HERR, LEACH, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.