## BURNES NAT. BANK v. MUELLER-KELLER CANDY CO. et al.

### No. 10654.

Circuit Court of Appeals, Eighth Circuit.

Nov. 13, 1936.

O. E. Shultz, of St. Joseph, Mo. (Stephen K. Owen and Shultz & Owen, all of St. Joseph, Mo., on the brief), for appellant.

Richard L. Douglas, of St. Joseph, Mo., for appellee.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order of the lower court confirming and approving an order of the referee in bankruptcy which rejected and disallowed appellant's claim against the Mueller-Keller Candy Company, a corporation, bankrupt.

The claim is in the form of a promissory note for $7,000, dated January 1, 1932, payable to the order of Fred M. Keller, at sight, with interest at 6 per cent., and signed, "Mueller-Keller Candy Company, by F. M. Keller, President." The trustee filed objections to the allowance of the claim, alleging that (a) the note was without consideration and was acquired by claimant after maturity and with knowledge of the absence of consideration; (b) the note was signed by Fred M. Keller as president of the bankrupt, payable to his own order, without consideration and without authority of the bankrupt's board of directors, when he was heavily indebted to the bankrupt, and such facts were known to claimant when it acquired the note; (c) at the time the purported note was executed, the payee named therein was indebted to the bankrupt in a sum exceeding $87,500; that said note was executed by the

payee without authority from or knowledge of the board of directors, and he was indebted to the bank in sums greatly in excess of $7,000 on January 1, 1933, when he executed and delivered to himself the promissory note; that all said facts were known to claimant before it acquired and attempted to become the owner of said promissory note.

The claim was rejected and disallowed by the referee, who filed findings of fact and conclusions of law sustaining the contentions of the trustee. On review, the lower court approved and confirmed the order of the referee, and in doing so said: "I concur in the views and reasoning expressed by the learned referee in connection with his order disallowing the claim of the Burnes National Bank."

On this appeal it is urged by appellant (1) that the referee erred in finding and concluding that the note was without consideration; (2) that as against claimant, the indorsee of the note, there was no right of set-off because only equities that are connected with the note itself constitute a defense; (3) the referee erroneously held that the note was a "sequel" to Keller's debt created by his unlawful appropriations, and hence a set-off was not allowable; (4) that Keller's withdrawals and their satisfaction by delivery of stock did not deprive him, as president and business manager of the company, of the power to make a valid contract for a lawful purpose; and (5) that the trustee is estopped to deny that Keller's debt to the company was paid by delivery of stock. The findings of the referee which were approved by the court are not seriously challenged on this appeal, although the inferences drawn therefrom are urged to be unwarranted by appellant.

It appears from these findings and conclusions (1) that the execution of the note already described was not authorized by any action of the board of directors; (2) that prior to its execution Fred M. Keller, president and business manager of the company, had advanced to the company, from money borrowed on his life insurance, various sums from January 2, 1932, to September 15, 1932, amounting in the aggregate to $7,000; (3) that prior to these advancements, and beginning in the year 1926, Keller, without authority from the board of directors, borrowed or advanced to himself various sums of the company's money, with which he purchased from other stockholders their stock in the company, the amount of said debt amounting on July 1, 1926, to $25,619.56, and increased to $85,772 on December 31, 1929; (4) that during these years, and until 1930, the sums so borrowed from the company were charged to Keller's open account on the books of the company, in which account he was credited with his salary as president, and debited with his withdrawals; (5) that about January 1, 1930, the account was increased to $87,500, and by direction of Keller to the cashier and bookkeeper, and without authority from the board of directors, it was segregated as a separate account of Keller under the heading "F. M. Keller, Special," to distinguish it from Keller's active account. On the active account he owed, on January 1, 1932, over $2,000; (6) that on January 1, 1932, Keller still owed the company $87,500 on this special account, and thereafter, in July, 1932, without authority of the board of directors, he then directed the cashier and bookkeeper to close out this special account of his indebtedness as of date January 2, 1932, and to charge capital stock with said amount, thus "by such nunc pro tunc entry" causing the books of the company to show that said indebtedness had been wiped out by the transfer of said stock when the advancements of the $7,000 began. These advancements, totaling $7,000, were then carried on open account as a charge against the company until January 1, 1933, when they were by Keller as president, without authority from the board of directors, put in the form of the company's note, which is the basis of appellant's claim; (7) that at subsequent annual meetings of the stockholders and adjourned sessions thereof, held in January and February, 1933, it was contended that Keller still owed the company this $87,500, and had no right to turn in said stock in payment thereof, and that the company had no authority to purchase it, and at this time "three trustees, who were elected directors, though requested by Keller to do so, refused to recognize this $7,000.00 note"; (8) that members of the board of directors of the company and officers of the Burnes National Bank had knowledge of said controversy in January and February, 1933, the president of the bank and one of the bank's directors being in attendance at said stockholders' meeting; that about a month prior to the time the $7,000 note was delivered by Keller to the bank, pursuant to direction of some one assuming the right

to speak for the company, the cashier and bookkeeper charged back to Keller's account the $87,500 previously charged off; (9) that the Burnes National Bank knew of said debt of Keller and his attempted stock payment thereof, and of the absence of authorization and of the criticism of the transaction, when, in May, 1934, it acquired from Keller the note in question; that it was at said time turned over to claimant in payment of his debt owed by and then due from Keller to the bank.

The referee concluded that claimant was not a holder of the note in due course, but that it took with knowledge of its infirmities; that the note was not a separate transaction divorced from the transactions by which Keller unlawfully withdrew and appropriated to his own use the funds of the company, and that the claimant stood in no better position than did Keller, and that the transfer of said note to claimant did not defeat or have the effect of cutting off the right of set-off. The referee entered still other conclusions which, in our view of the case, are not important on this appeal.

That claimant was not a holder in due course is conceded by appellant in its reply brief, and hence we need give that issue no further consideration.

 It is contended by appellant, however, that, notwithstanding the fact that it is not a holder in due course of this negotiable paper, it is nevertheless in a better position to assert the claim than was the original payee, Keller. The circumstances under which this note was executed are, to say the least, extraordinary. The payee was the president and business manager of the Mueller-Keller Candy Company, and as such apparently in full charge of its business affairs. Without any authorization therefor, he withdrew and appropriated to his own use the sum of $87,500 of the company's money. Having thus illegally depleted the funds of the company, it resulted that the company was in need of cash to take care of its current obligations, and he then from time to time advanced, as he says, funds to the company for that purpose, amounting in the aggregate to $7,000. Several months subsequent to the date of the last advancement of money, without any communication with or authority from or action by the board of directors, he, in the name of the company, executed a note to himself for this $7,000 instead of applying it on the debt which he at that time owed his corporation. As president and business manager, he stood in a fiduciary relation to his corporation. This relation required of him the utmost good faith and loyalty to the interests of his principal. He could not lawfully secure any undue or unjust advantage of that company as a result of a transaction in which his interests as an individual were antagonistic to those of his corporation. Trice v. Comstock (C.C.A.8) 121 F. 620, 61 L.R.A. 176; Burnes v. Burnes (C.C.A.8) 137 F. 781, 790; Winget v. Rockwood (C. C.A.8) 69 F.(2d) 326; Johnson v. Umsted (C.C.A.8) 64 F.(2d) 316; Fulkerson v. Nat. Union Fire Ins. Co. (D.C.) 291 F. 784; St. Charles Savings Bank v. Edwards, 243 Mo. 553, 147 S.W. 978, 980; Holland Banking Co. v. Continental Nat. Bank, 324 Mo. 1, 22 S.W.(2d) 821; Weatherhold v. Nat. Liberty Ins. Co., 204 Ky. 824, 265 S.W. 311, 312; Neuendorff v. World Mutual Life Ins. Co., 69 N.Y. 389; Bank of Canton & Trust Co. v. Clark, 198 N.C. 169, 151 S.E. 102; Nat. Fire Ins. Co. v. Llewellyn, 142 Okl. 272, 286 P. 792, 83 A.L.R. 1502; Haines v. First Nat. Bank, 89 Or. 42, 172 P. 505. In all these transactions, Keller was in fact representing both the corporation and himself. In the note transaction, he alone, without knowledge of his principal, executed the instrument. Not only were these transactions unauthorized by any action of the board of directors, but, as found by the referee, they were not subsequently ratified. It is against public policy to permit an agent to enter into a contract with himself as agent for his principal, without the acquiescence or ratification of his principal. When these advancements of money were made, under the circumstances disclosed, equity and good conscience required that they be applied on the indebtedness which Keller owed the company. Not having been authorized by the board of directors, nor ratified by either the board of directors or the stockholders, the note was in any event void at the option of the corporation, its creditors, or stockholders.

In Burnes v. Burnes, supra, this court, speaking through the late Judge Sanborn, said: "Contracts and transactions between individuals and corporations of which they are controlling directors or officers, which are unfair, in which the individuals secure any undue or unjust advantage, in which an antagonism between the interest of the individuals and the duty of the officials has resulted in the triumph of the former, are voidable at the option of the

corporation or its creditors or stockholders."

In St. Charles Savings Bank v. Edwards, supra, it is said: "It is hardly necessary to say that an agent cannot act both for his principal and himself in a transaction wherein their interests are antagonistic. Such action by the agent is not within the scope of his general authority, and this is known to those who deal with him."

In Weatherholt v. National Liberty Ins. Co., supra, the rule is stated as follows: "A just public policy forbids one to enter into a contract with himself as agent for another, without the acquiescence or ratification of the principal."

The referee has found, and the evidence amply sustains the finding, that the bank had full knowledge of all the facts and attending circumstances in connection with these questioned transactions. It received the note some eighteen months after its date. As indicating that the acts and manipulations of Keller were not ratified, it is observed that Keller testified as follows: "The $7,000.00 note was held by me that length of time because of some controversy. I tried to have an acknowledgment of it which the trustees refused to acknowledge. The Burnes National Bank and representatives of preferred stockholders were trustees in charge of the business at the time."

It seems that there were three voting trustees who held voting control of the stock of the bankrupt who were members of its board of directors.

In the opening sentence of its brief, appellant states that, "This is an action in equity," and a court of bankruptcy is essentially a court of equity. Continental Ill. Nat. Bank & Trust Co. v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110. We have already observed that in equity and good conscience, the money advanced by Keller should at once have been applied on his indebtedness, or rather, to restore to that extent the funds which he had unlawfully withdrawn. Equity regards as done that which ought to be done, and so applying these advancements there was no consideration for the note, and it was void in the hands of the bank, taking it, as it did, with knowledge of all the surrounding facts and circumstances which proclaimed its invalidity.

Based on the assumption that the note was not void in the hands of appellant, it is urged that as assignee of a negotiable note, transferred after maturity, it took it subject only to equities that attached to the note itself, and hence that equities growing out of independent or collateral transactions were not available as a defense. But the referee held that the note was connected with the transactions and manipulations practiced by Keller, through which he withdrew and appropriated to his own use the funds of the company. It was only because of these unlawful withdrawals that there was any occasion for Keller to have made these advances to the company, and a federal court of equity is not bound by technical rules of state procedure applicable in law actions, where to apply them would result in manifest injustice.

In First National Bank of Indianola v. Malone, 76 F.(2d) 251, 254, in an opinion by Judge Van Valkenburgh, we said: "The right to assert a set-off at law is, of course, of statutory creation, and, while a federal court of equity is not restricted in its allowance of a set-off to the limitations prescribed by state statute, nevertheless the recognition of the right in the state where the action arose and was brought is highly persuasive. And where the statutory right of set-off is broader than the right of set-off in equity, federal courts of equity will enforce the broader statutory right."

In Brill v. W. B. Foshay Co., 65 F.(2d) 420, 424, speaking of the equitable jurisdiction of federal courts, we said: "The equitable jurisdiction of federal courts is that which was exercised by the High Court of Chancery in England at the time of the adoption of the Constitution, and the passage of the original Judiciary Act, unless subsequently changed or enlarged by act of Congress. This jurisdiction is administered uniformly throughout all the states, and furnishes one and the same rule of decision for federal courts of equity, and state laws do not ordinarily constitute a rule of decision binding on federal courts of equity. * * * Where the application of a state statute to the facts of a case will violate the fundamental principles of equity, a federal court of equity should not enforce the letter of such a statute." See, also, Mississippi Mills v. Cohn, 150 U.S. 202, 14 S.Ct. 75, 37 L.Ed. 1052; Neves v. Scott, 13 How. 268, 14 L.Ed. 140; Independent Dist. of Pella v. Beard (C.C.) 83 F. 5.

Even if by any applicable rule of law it could be held that this note in the hands

of the appellant had any validity, still, in a court of equity, it was subject to set-off. The appellant in these proceedings stood in the shoes of Keller, and could assert no greater right than could have been asserted by Keller.

Other contentions urged by appellant have been carefully considered, but they are without merit, and any discussion of them would serve no useful purpose.

The record presents no prejudicial error, and the order appealed from is therefore affirmed.