The case was tried before Judge Johnston, upon consent of the parties, without a jury.
The evidence tends to show that the plaintiff and appealing defendant had entered into a contract, subsisting at the time of the alleged transactions, whereby defendant agreed to receive and sell as agent of the plaintiff all the cotton waste from plaintiff's mills. The waste was produced by the mills in large quantities, and was of various kinds, designated by technical or trade names. The defendant was to receive as compensation an agreed percentage of the sales price — in some instances 5%, and others 6%. The defendant at the time was a large operator in the sale of waste, handling the product from a great many mills in an aggregately large amount.
The evidence further tends to show that over a number of years the defendant had caused the plaintiff to ship such waste principally to River Mills at Greenville, S.C., a plant largely engaged in cleaning cotton waste by a process known as "willowing." The defendant caused plaintiff's waste to be commingled with the waste from other mills, *Page 503 
sometimes as many as forty, and cleaned or willowed after such commingling, and then sold the product to various purchasers.
The defendant made return to the Anderson Mills upon the basis of its raw product; and it may be inferred from the evidence that the defendant itself became the actual purchaser and accounted to the plaintiff on that basis, retaining upon the transaction the sales commissions fixed by the contract and retaining the profits upon the transaction, without making a full disclosure to the plaintiff of the facts or that it had become the purchaser.
Upon discovery of these facts, the plaintiff brought this action for the recovery of the profits alleged to have been realized by the defendant's breach of trust, together with the commissions formerly paid to the defendant as commissions upon its sales.
In the development of the case, the defendant made numerous exceptions to the evidence, which, as necessity may require, will be considered in the opinion.
A motion for nonsuit made in behalf of the individual defendants was sustained.
Upon hearing the evidence, the judge made findings of fact and conclusions of law, and entered judgment thereon, as follows:
"FINDINGS OF FACT.
"1. That during the years 1933 to 1936, inclusive, the defendant, Royal Manufacturing Company, was commission agent to sell the entire output of the plaintiff's waste under a contract, the terms of which are contained in the letter of April 28, 1931, Exhibit B, attached to the complaint.
"2. That during the years 1935 and 1936, the defendant, Royal Manufacturing Company, instructed the plaintiff to ship to River Mills at Greenville, S.C., a total of 802123 pounds of waste of certain grades, and said waste was shipped and invoiced to Royal Manufacturing Company by Anderson at prices fixed by said defendant and designated in the shipping instructions, less commissions at the rates provided in the contract between the parties.
"3. On said shipments the plaintiff paid the defendant, Royal Manufacturing Company, commissions totaling $934.14.
"4. That without the knowledge or consent of the plaintiff the defendant, Royal Manufacturing Company, caused the waste so shipped to it at River Mills to be mixed with large quantities of waste from other sources and put through a process known as willowing and then sold the finished product as its own, making a profit thereon, in addition to the commission received by the defendant from the plaintiff, for which profits defendant has not accounted to its principal, the plaintiff.
"5. That the sales value of the plaintiff's waste shipped to River Mills during 1935-1936, based on the sales made by the defendant, Royal *Page 504 
Manufacturing Company, to its customers, was $27,485.46, and said defendant, Royal Manufacturing Company paid to the plaintiff therefor $15,432.37, less the commission mentioned in finding of fact # 3, and that, in addition to said commissions, the said defendant made a gross profit on said waste of $12,053.09.
"6. The defendant, Royal Manufacturing Company, had expenses in connection with said waste and the resale thereof totaling $5,567.94, leaving the said defendant a profit after deducting said expenses of $6,485.15.
"7. That the commissions allowable to the defendant, Royal Manufacturing Company, under the contract based on the final sales value of the waste as set out in finding of fact #5 would amount to $714.99 in addition to the commissions actually paid, as set out in finding of fact #3.
"8. The plaintiff had no knowledge that the Royal Manufacturing Company was purchasing said waste, nor that it was making a profit thereon in addition to the commissions paid to it under the terms of the contract until the Spring of 1939.
"9. This action was instituted on the 12th day of May, 1939.
"10. During the years 1933 and 1934, the plaintiff shipped to River Mills at Greenville, S.C., on instructions of the defendant, Royal Manufacturing Company, a total of 689,784 pounds of waste, and the plaintiff paid said defendant for selling said waste commissions totaling $573.19. That by reason of absence of records of the defendant it is impossible to ascertain what was done with said waste, or how much profit, if any, the defendant made thereon.
"11. That during the four years in which said contract was in effect, the corporate defendant instructed the plaintiff to ship certain grades of its waste to certain individuals in care of Von Dohlan Steamship Company, Charleston, S.C., giving such instructions as to all of the shipments of said nature referred to in the complaint.
"12. That from the records available, the plaintiff has been able to trace and show evidence of what became of only a part of said shipments, but from the ones traced the court finds that, in addition to commissions paid, the corporate defendant made a profit on said transactions of $675.35.
"13. That the individuals to whom the shipments referred to in the preceding paragraph were made were employees of the corporate defendant, and that the corporate defendant purchased said waste for its own account without the knowledge or consent of the plaintiff, and that the plaintiff had no knowledge that said defendant was purchasing said waste for its own account, or that it was making a profit thereon in addition to commissions until the Spring of 1939. *Page 505 
"14. That on the shipments to Charleston, S.C., in care of Von Dohlan Steamship Company, referred to in finding of fact #11, purchased by Royal Manufacturing Company for its own account without the knowledge of the plaintiff, the plaintiff paid said defendant commissions amounting to $637.86, of which amount the sum of $187.67 was commissions on the shipments which the plaintiff was able to trace, and to show that the defendant made a profit in addition to said commissions.
"15. On the 30th day of October, 1934, the plaintiff shipped to Bladenboro Cotton Mills, Bladenboro, N.C. 15,250 pounds of waste upon instructions of the defendant, Royal Manufacturing Company, and, in accordance with said instructions, invoiced Royal Manufacturing Company for said waste at the rate of $10.94 per cwt. Royal Manufacturing Company had actually sold said waste to Bladenboro Cotton Mills at $12 per cwt., and that the difference between the amount paid plaintiff on said waste, and the amount received by defendant, Royal Manufacturing Company, amounts to $161.65. In addition thereto the plaintiff paid said defendant for making said sale commissions amounting to $80.06. The plaintiff had no knowledge that said waste had been sold for more than $10.94 per cwt., until the Spring of 1939.
"16. That the plaintiff's cause of action is not barred by the statute of limitations.
"CONCLUSIONS OF LAW.
"1. That the relation of principal and agent existed between the plaintiff and the defendant during the years 1933-1936, inclusive.
"2. That the plaintiff is entitled to recover of the defendant the sum of $5,770.16, representing the profits made by the defendant, Royal Manufacturing Company, on the River Mills transactions for 1935-1936, in addition to commissions.
"3. That the plaintiff is entitled to recover of the defendant the sum of $675.35, representing profits made by the defendant on shipments to certain individuals in care of Von Dohlan Steamship Company, Charleston, S.C., in addition to commissions paid upon said transactions.
"4. That the plaintiff is entitled to recover of the defendant the sum of $161.65, representing profits on the Bladenboro transactions, in addition to commissions.
"5. That the plaintiff is not entitled to recover anything from the defendant, Royal Manufacturing Company, on account of commissions paid, nor on account of additional commissions allowed in arriving at the figure of $5,770.16 on the River Mills transactions, and is not entitled to recover anything on said River Mills transactions except as set out in conclusion of law #2. A. HALL JOHNSTON, Judge Presiding. *Page 506 
"JUDGMENT (of Johnston, J.).
"This cause coming on to be heard at the 1941 Extra Term of Mecklenburg County Superior Court, before His Honor, A. Hall Johnston, Judge Presiding, and being tried by the Judge without a jury, pursuant to agreement of the parties embodied in the order signed by His Honor, S. J. Ervin, Jr., appearing in the record, and the Court having heard the pleadings and the evidence, and having sustained motion for a nonsuit as to the individual defendants, and having made findings of fact and conclusions of law as between the plaintiff and the corporate defendant, Royal Manufacturing Company, which findings of fact and conclusions of law appear in the record, and it appearing to the Court that the plaintiff is entitled to a judgment against the defendant as hereinafter set out.
"It is thereupon ORDERED, ADJUDGED AND DECREED that the plaintiff have and recover of the defendant, Royal Manufacturing Company, the sum of $6,607.16, together with the costs of this action to be taxed by the Clerk.
"It is further ordered that an expert witness fee in the amount of $100.00 be allowed to A. F. Dichtenmueller, and an expert witness fee in the amount of $40.00 be allowed to W. F. Jackson to be taxed by the Clerk as a part of the costs of this action. This October 10, 1941.
 A. HALL JOHNSTON, Judge Presiding."
The plaintiff excepted to the refusal of the court to adopt certain findings of fact and conclusions of law with respect to the commissions of the defendant, an item of expense with respect to willowing the cotton waste, interest upon the money alleged to be owed by the defendant to plaintiff, and excepted to the conclusion of law #5 as above set out, relating to the same matters. The defendant filed numerous exceptions to the findings of fact and conclusions of law, which, as far as necessary, will be covered by the opinion.
Both plaintiff and defendant appealed, assigning error.
We endeavor to avoid repetition in the discussion of principles closely interrelated in considering the two appeals. For convenience, we discuss defendant's appeal first.
DEFENDANT'S APPEAL.
The defendant's objections to the evidence relate principally to the methods adopted by plaintiff in establishing the quantum of recovery for *Page 507 
the value of the goods sold by defendant under the agency, or the proportionate amount of recovery therefor.
We think, in the main, that these objections are rendered untenable, or at least made legally harmless to defendant, by reason of the findings of fact based upon competent evidence.
It might be inferred from the evidence, and it is so found, that the defendant attempted to become the purchaser of plaintiff's commodity in violation of the trust relation existing between them; and having supposed itself to have achieved that result, concealed from the plaintiff the profits made out of the transaction. In accomplishing this, it commingled plaintiff's waste with the waste of some forty other mills, or, in legal effect, with its own property. Both in view of the wrong committed and because the facts were within the peculiar knowledge of the defendant, the burden was upon it to identify plaintiff's goods on demand, or, since this was impossible, at least, as we conceive the law to be, to show what proportion of the proceeds of the sale less than the whole was due the plaintiff, or run the risk of a greater recovery. The defendant was not helpful in this respect, and plaintiff was forced to develop its case as best it could from defendant's records. It was content to demand only a proportionate part of the sales receipts or value of the product sold.
In this attempt, there were two lines of procedure: one based on the value of the waste from plaintiff's mills handled by the defendant, supplemented by evidence as to the value of the waste sold; and the other based on the proportionate poundage of plaintiff's waste in the commingled product. Perhaps, neither could be held as strictly accurate in results, since there was evidence that the value of waste was unstable and varied greatly with the kind. The objections, however, are more properly addressed to the effect of the evidence than to its competency.
The method adopted in the investigation afforded as near an approximation to reality as could be expected under the circumstances; and defendant having declined the burden of proof which we think rested upon it, in view of its breach of the duty to keep plaintiff's property separate from its own, has no cause to complain.
A careful review of the exceptions does not disclose any of sufficient merit to justify a new trial on defendant's appeal.
PLAINTIFF'S APPEAL.
We are bound by the findings of fact where there is competent legal evidence to support them, and ordinarily we cannot require the finding of additional facts or conclusions unless the appealing party has specifically requested the finding. In this case, we do not think the findings requested by the plaintiff could alter the result, as they are sufficiently *Page 508 
covered by those actually made in so far as might be necessary for final determination of the controversy.
However, the plaintiff's appeal brings up for review conclusion of law No. 5, which fails to award to plaintiff return of the commissions paid defendant for its purported sales which were, in fact, made to itself, and allows commissions on sale on the cleaned waste, the expenses of willowing, and denies to the plaintiff the item of interest demanded by it.
Plaintiff's recovery cannot exceed the legal effect of the findings made by the court.
It is strongly urged upon us that throughout the transaction the defendant's conduct was tortious and that its legal liabilities are those of a trespasser. Apparently, when the case was heard before, Cotton Millsv. Manufacturing Co., 218 N.C. 560, 11 S.E.2d 550, the view presented by plaintiff would make the defendant a mere tort-feasor and trespasser from the beginning; and this Court understood the gravamen of the complaint to be that defendant obtained possession of the property through fraudulent devices with the purpose of committing the other wrongs subsequently practiced. Upon demurrer of the defendant, the Court sustained the complaint as properly presenting a cause of action in tort. That was the aspect of the case then presented. The trial, however, developed a contractual relation, in which the defendant was found to have departed from the duties imposed by his agency — in other words, committed breaches of trust in its contractual relation — and the findings of the court go no further.
Becoming, or attempting to become, the purchaser of its principal's goods and accounting only on that basis, it transpired that in carrying out this transaction, defendant further violated its duty as plaintiff's agent by commingling the plaintiff's goods with its own and selling it at a profit which it did not reveal.
We apprehend that the consequences and penalties which attend this conduct of the defendant are somewhat different from those which the law visits on one who, a trespasser ab initio, having never acquired the right to the possession of the property, but takes it, converts it to his own use, changes it into a different form, and sells the property thus altered. The more heinous nature of the civil offense, together with obvious necessity of public policy to prevent both the invasion of the possession and the conversion of the property, makes such an offender a trespasser abinitio ad finem. We think the cases cited in plaintiff's brief denying credit for expenses incurred in improving the property or converting it into a more valuable form have application to such a case. Pine RiverLogging Improvement Co. v. U.S., 186 U.S. 279, 46 L.Ed., 1164;Wooden-Ware Co. v. U.S., 106 U.S. 432, 27 L.Ed., 401. It was for the owner, according to its own desire and judgment, to handle its property as it thought best. *Page 509 
In the case at bar, plaintiff was not injured by the cleaning or willowing of its waste in the hands of its agent — it constituted an improvement which produced a sale at a much higher price — and sale of the product was the prime purpose of the contract. The plaintiff now demands as its equitable right the payment to it of the secret profits realized on the purchase price of the improved property. To disallow the expenses of the willowing would, in our judgment, be the infliction of a naked penalty, for which we are unable to find precedent, and go beyond the rule which permits the principal to recover the profits of the agent's transaction.
Plaintiff, however, has raised a more serious question with regard to the allowance of commissions to the defendant on the sale of its waste. Speaking generally, when an agent, in a fiduciary relation, is guilty of disloyalty to his principal and when by virtue of his position he seeks to make profit to himself rather than promote the interest of his principal, he is not entitled to compensation. Mechem on Agency, sec. 1588; Restatement of the Laws, Agency, sec. 456.
It has been suggested that the allowance of commissions in the case at bar may be sustained because of an implied affirmance or ratification by the plaintiff through the institution of this suit and the relief demanded in it.
The effect of the rule that a selling agent cannot become the purchaser of his principal's property is to make such sale voidable by the principal, who may, at his election, ratify or disaffirm it, whether injured by the transaction or not. Robertson v. Chapman, 152 U.S. 673, 38 L.Ed., 592;Gardner v. Ogden, 22 N.Y. 327; Tatsuno v. Kasai, 70 Utah 203,259 P. 218, 62 A.L.R., 54, Annotation 62 A.L.R., 71. If the principal disaffirms the sale of the agent to himself, he is entitled to have his property back with the damages, if any, or to have the value thereof with incidental damages, if any, consequent upon the wrongful transaction. 2 Am.Jur., sec. 259.
But it is a recognized principle of law that the agent who thus violates his duty may be regarded — at the election of the principal — as trustee with respect to the property and its proceeds, and if he has transferred it to a bona fide purchaser, he may be made to account not only for its real value, but for any profit made by him on a resale. Robertsonv. Chapman, supra; 2 Am. Jur., Agency, sec. 259; Am. Inst. Restatement, Agency, secs. 399 (d) and 400 (c).
It is more logical and nearer reality to say that the plaintiff has been compelled to accept the situation thrust upon it by defendant's wrong and, by election of remedies, to work out its equities to the best advantage. It does not thereby necessarily condone everything the defendant has done. Equity will follow these transactions and give to them their *Page 510 
proper significance and legal effect in applying the appropriate remedy when that remedy is pursued by the principal.
The rule which denies to the agent the right to purchase property of its principal which has been entrusted to him to sell to the best advantage, and thereafter to deal with it as his own, is firmly embedded in the law as an expression of public policy. The principle is said to be one of prevention, not remedial justice, which operates, however fair the transaction may have been, however free from every taint of moral wrong.National Fire Ins. Co. v. Llewellyn, 142 Okla. 272, 86 P. 792, 83 A.L.R., 1502; Am. L. Inst. Rest., Agency, sec. 389. However, in addition to this general rule of public policy, we think there is a reason of special application in the case at bar. To recover commissions the defendant must resort to its contract and to the performance of its conditions in hocmodo, and this defendant has not done. There is no compensation recoverable outside of the contract.
In selling to itself, the defendant attempted to act in the double capacity of agent and purchaser — a combination so incompatible and noxious to the fundamental rule of loyalty demanded of an agent to his principal, acting as a fiduciary, as to be intolerable to public policy. In selling plaintiff's waste to itself, the defendant must be considered as acting solely as purchaser and performing no compensable service for the plaintiff.
In the sale of the property thereafter, defendant did not purport to act as agent of the plaintiff, but sold to its own advantage and for its own profit. Defendant had become trustee of the property de son tort, a situation incompatible with a demand for commissions under the contract.
Conceding that in some instances a denial of commissions to a trustee may, under the circumstances of the case, become a matter of discretion with the trial court, we are of the opinion that here they were, as a matter of law, not recoverable and should not have been allowed.
Under C. S., 2309, all sums of money due by contract, except money due on penal bonds, bear interest as a matter of law. In Bond v. Pickett CottonMills, 166 N.C. 20, 81 S.E. 936, the law is said to apply to breaches of contract where the principal amount due can be ascertained "from the terms of the contract itself, or from evidence relative to the inquiry." This language is somewhat confusing as indicating that interest may be had as a matter of law for all breaches of contract, whether liquidated or not; but, at any rate, we do not believe that the law permitting the recovery in this case is altogether based on breach of contract. Any principle justifying recovery — whether recovery of secret profit or otherwise — is based on the theory of liability created by public policy, which superadds to the contract a right of an equitable nature which cannot be considered strictly damages for its breach or within its *Page 511 
express or implied promise to pay. It is a right growing out of the relationship created by the contract, rather than the contract itself, and the methods by which the amount of recovery is to be ascertained are not strictly those which apply to ordinary breaches of contract. The recovery of plaintiff in this case is not predicated on conversion of its property, or it would be limited to the damages immediately incident to the conversion, and, therefore, the demand made on the defendant by the commencement of the suit as fixing the date from which interest should be calculated is not of moment. Lance v. Butler, 135 N.C. 419, 47 S.E. 438.
Recovery of profits on transactions involving disloyalty of agents acting in fiduciary relations is commonly referred to the principle of constructive trusts — a trust arising ex maleficio — out of violation of the trust relation — and not subject to the incidents of contract. Bogert, Trusts and Trustees, sec. 543, p. 729; Underhill, Law of Trusts and Trustees, 9th Ed., p. 184, et seq.; Perry on Trusts, 11th Ed., sec. 206, p. 355, et seq.; Lewin on Trusts, p. 166. We quote from the last cited text: "The principle on which a court of equity elicits constructive trusts might be pursued with numerous other instances; as if a factor, agent . . . or other person in fiduciary positions acquire any pecuniary advantage to himself through the medium of his fiduciary character, he is accountable as a constructive trustee for those profits to his employer or other person whose interest he was bound to advance — but unless the money was originally that of his principal, it cannot be said to be his until a judgment or order has been obtained."
Recovery in instances of this kind is not a matter of exact measurement under the terms of the contract, but seems to be sui generis, and we are of the opinion that it does not come within the cited statute — C. S., 2309 — so as to bear interest as a matter of law. We do not, of course, mean to say that interest is never recoverable except under the provisions of C. S., 2309, or that there are no conceivable instances in which interest might be recoverable in connection with the enforcement of a constructive trust; but upon the facts of this case, we approve the conclusion reached by the court below with respect to this item.
The defendant will not be allowed commissions on the sales transactions set out in the findings of fact; and plaintiff is entitled to recover commissions already paid to the defendant or retained by it. These may be computed by reference to the findings of fact.
The judgment of the court below will be modified in accordance with this opinion.
On plaintiff's appeal,
Modified and affirmed.
On defendant's appeal,
Affirmed. *Page 512