Samples v. Maxson-Betts Co.

_____

W. L. SAMPLES v. MAXSON-BETTS COMPANY

No. 7326SC275

(Filed 13 June 1973)

1. **Brokers and Factors § 4— kickbacks received by employees — employer's right to employee's earnings — sufficiency of evidence**

Where the evidence tended to show that plaintiff, as a salesman for defendant, procured two contracts with a steel company for defendant for which he received a commission, but that, without defendant's knowledge, plaintiff assisted in doing part of the work on the two jobs subcontracted to the steel company for which plaintiff received payment from the steel company, which payment was included in the cost of the contract to defendant, the evidence was sufficient to present questions for the jury as to whether the earnings of plaintiff were undisclosed and gained in the course of, or in connection with, the services of the plaintiff which were owed to the defendant,

and whether those earnings were achieved as a result of the plaintiff's breach of his fiduciary relationship with the defendant; therefore, it was error for the trial court to direct a verdict for plaintiff on defendant's counterclaim for "kickbacks" received by plaintiff on sales made by him on behalf of defendant.

**2. Brokers and Factors § 6— action by employee to recover commissions — sufficiency of evidence**

In an action to recover commissions allegedly due plaintiff by virtue of his employment contract with defendant, evidence was sufficient to carry issues to the jury as to whether there was a contract between plaintiff and defendant, whether the job in question was covered by that contract and the amount of recovery due the plaintiff under the contract.

**3. Appeal and Error § 53— instruction on quantum meruit — no error**

Even if there was insufficient evidence to raise an issue as to *quantum meruit* recovery, the charge of the court as to that issue did not amount to prejudicial error, since the jury found for plaintiff on the basis of an express contract and not on the basis of *quantum meruit*.

APPEAL by defendant from *Froneberger, Emergency Judge,* 25 September 1972 Session of Superior Court held in MECKLENBURG County.

This is a civil action to recover commissions allegedly due plaintiff by virtue of his employment contract with defendant. Plaintiff alleges that he was employed by defendant as a sales engineer from July 1967 until December 1970 when he terminated his employment; that pursuant to the contract, plaintiff was to receive 45 per cent of the gross profit made by defendant as a result of the sale of materials used on construction jobs where the sales were obtained for the defendant and the installation of the materials supervised to completion by plaintiff; that plaintiff had a monthly "draw" from defendant of $1600; that the gross profit on the sale and installation of windows on the "Piedmont Courts" project which plaintiff sold and supervised to completion was $37,879; that gross profits for the sale and installation of other materials and other projects not yet completed amounted to some $7300; and that defendant had refused to account for the share of the profits due to plaintiff under the contract.

Defendant answered, denying the material allegations, and averring that no sums were due plaintiff at the time of the termination of plaintiff's employment contract. By way of counterclaim, defendant asserted that plaintiff received "kickbacks" on certain sales made by him without the knowledge or

consent of defendant, and that defendant was entitled to recover any such secret profits from plaintiff.

Plaintiff's evidence tended to show that his duties required him to call on architects and general contractors, bidding for work orders on construction projects and supervising the shipping and, if necessary, installation of the materials sold. Plaintiff worked pursuant to an oral contract by the terms of which plaintiff was to receive 45 per cent of the gross profit on "each job sold," or share 45 per cent of any loss. As an advancement against his commission, plaintiff received $1600 each month. Defendant was a "manufacturers agent," representing material manufacturers with whom defendant held contracts. Normally, the relationship of defendant on a construction job was that of subcontractor. On the "Piedmont Courts" job, plaintiff "handled the job, sold it and looked after the complete installation of it." The gross profit on that project was stipulated to have been $37,879. Of that sum, plaintiff received from the defendant $9,470 toward his share of the gross profits, but the defendant company failed and refused to pay the plaintiff the full 45 per cent of the $37,879 gross profit (which would have amounted to $17,045.55). Plaintiff testified that he and Bruce Betts and Max Maxson attempted to reach a settlement agreement concerning the amount of commission owed to plaintiff for the Piedmont Courts project and that Betts and Maxson, on behalf of the defendant, offered to pay plaintiff an additional $4,000 in full settlement of plaintiff's commission, but that thereafter plaintiff received only one check for $1,000 and that the settlement agreement was never carried out. On cross-examination, plaintiff testified that, although on the Piedmont Courts job the defendant company acted in the capacity of a general contractor, rather than in their normal capacity of subcontractor, ". . . I had an agreement with Maxson-Betts Company that I would receive 45% of the profit on any job that I handled. This was a verbal agreement. . . ." At the close of the plaintiff's evidence the defendant moved for a directed verdict: Motion denied.

During the presentation of defendant's evidence, the following stipulation was read into evidence:

"STIPULATION: It is agreed and stipulated that, while Mr. Samples was employed by Maxson-Betts Company, that he was to be paid 45% of any gross profits on any jobs, and

that on any jobs on which there was a loss his account would be debited with 45% of such losses."

Defendant introduced evidence tending to show that at the time the contract for the Piedmont Courts project was executed, the defendant and plaintiff had an understanding that the defendant would be acting as a general contractor on the Piedmont Courts job, and that there was no understanding or agreement that plaintiff would receive 45 per cent of the gross profits on that job. On cross-examination Bruce Betts testified that, "[t]he City was who we contracted with. The job went smoothly and was finished. It was not only after that that there came up with regard to a discussion of the division of the profits, and I decided that he would get 25 per cent. . . . There were discussions about what per cent he would get that came up during the time of the job. There never was any agreement about it. What happened was that I, as Secretary and Treasurer, determined what amount I would credit his account with. . . ."

At the close of the defendant's evidence, the motion for a directed verdict was renewed: Motion denied. The jury returned a verdict on issues submitted to it that the Piedmont Courts project was included in the contract between the plaintiff and defendant stipulated to at the trial, and that plaintiff was due under that contract the sum of $7,575.55. An issue submitted regarding recovery by the plaintiff on a *quantum meruit* basis, and issues submitted with respect to recovery by plaintiff of commissions on jobs other than the Piedmont Courts project were returned answered in the negative. The defendant's motion for judgment n.o.v. was denied. Judgment was rendered on the verdict that the plaintiff recover of the defendant the sum of $7,575.55. Defendant appealed to the Court of Appeals, assigning error.

*Sanders, Walker and London, by Alvin A. London and Richard A. Lucey, for plaintiff appellee.*

*Weinstein, Sturges, Odom & Bigger, P.A., by T. LaFontine Odom, for defendant appellant.*

MORRIS, Judge.

By assignment of error No. 3 defendant raises the question whether the court erred in granting the motion of the plaintiff for a directed verdict, G.S. 1A-1, Rule 50(a), as to defendant's counterclaim. In its counterclaim, the defendant alleged that

prior to 1 December 1970, the plaintiff was a full-time employee of the defendant and by the terms of his employment was to devote his full time and energies to the defendant's business; that plaintiff caused defendant additional expenses on certain "jobs" by taking secret "kickbacks"; that the "kickbacks" amounted to some $2,950, plus other indeterminate amounts, received during 1969 and 1970. The defendant prayed that it have and recover of the plaintiff the full amount of any funds so obtained.

The evidence elicited at the trial of the cause on this issue tended to show that during 1969 and 1970, the plaintiff received two payments totaling $2,940 from the B and H Steel Erecting Company which were not disclosed or reported to the defendant. As to the first payment of $940, the evidence concerning its origin was that the plaintiff earned the money for managing the installation of certain equipment at Jacksonville, North Carolina, on a weekend and that plaintiff used some of the money to pay expenses for the men and the equipment that were hired by him for the job.

The plaintiff testified that the equipment installation was performed under his direction as a part of "the Helicopter Group Training job," and that Maxson-Betts Company was a subcontractor on that job. Plaintiff testified that "the Helicopter Group Training job, I did on the weekend at my own expense, to help the erector out because he didn't have any men to send down there, and the material that was on the job had to be erected that weekend. So, I took men and equipment, went to the job and worked the entire weekend and installed the equipment for him. He in turn paid me the $940 that was in the job for erection, and I in turn paid the men and all their expenses for the weekend." The plaintiff further testified that he received a second $2,000 payment as a result of work performed by him in construction of a conveyor system for the B and H Steel Erecting Company on "the Allied Chemical job in Irmo, S. C.," on which job Maxson-Betts Company was a subcontractor. Plaintiff testified that "[w]e could not find a manufacturer who could make this particular item. So I worked with Mr. Tom Brown, of B and H Steel Company, and Mr. Larry Lupo, of the Coleman Company, and we spent many hours engineering this system and building it. Now, this money [the $2000] was in payment for my services doing this. Maxson-Betts Company paid B and H Steel Company for the erection of an overhead

crane system and the conveyor systems. They also paid B and H Steel Company for the manufacture of the conveyors and the installation of the conveyors. . . ."

The general rule in regard to secret profits garnered by employees, not disclosed to their employers, in breach of their fiduciary relationship with their employer, is that the earnings of the employee in the course of, or in connection with, his services belong to the employer, so that the employer in a proper action may recover the profits of the agent's transaction and the employee is accountable therefor. *Cotton Mills v. Manufacturing Co.*, 221 N.C. 500, 20 S.E. 2d 818 (1942) ; 56 C.J.S., Master and Servant, § 71; 53 Am. Jur. 2d, Master and Servant, § 101; Lee, North Carolina Law of Agency and Partnership, §§ 31, 37; Annot., 102 A.L.R. 1115; Restatement of Agency 2d, § 388.

[1] The evidence in this case viewed in the light most favorable to defendant and giving defendant the benefit of every reasonable inference therefrom, tends to show that plaintiff, as a salesman for defendant, procured two contracts for defendant for which he received a commission, but that, without defendant's knowledge, plaintiff assisted in doing part of the work on the two jobs subcontracted to the B and H Steel Company for which plaintiff received payment from the B and H Steel Company, which payment was included in the cost of the contract to defendant. Viewed in this light, plaintiff's position and interests were adverse to those of defendant, plaintiff's employer: plaintiff had an interest in contracting with the B and H Steel Erecting Company in order to recover additional compensation for services they would permit him to perform, whereas defendant's interests were in contracting for the lowest possible cost. We are of the opinion that the evidence on this issue was sufficient to present questions for the jury whether the earnings of the plaintiff were undisclosed and gained in the course of, or in connection with, the services of the plaintiff which were owed to the defendant, and whether those earnings were achieved as a result of the plaintiff's breach of his fiduciary relationship with the defendant. Therefore, it was error for the trial court to direct a verdict, dismissing the counterclaim of the defendant.

[2] By assignments of error Nos. 1 and 2, defendant raises the question whether the trial court erred in denying the motions of the defendant for a directed verdict and for judgment not-

withstanding the verdict, G.S. 1A-1, Rule 50(a) and (b). We are of the opinion that the evidence was sufficient to carry issues to the jury regarding the existence of a contract between plaintiff and defendant, whether the Piedmont Courts job was covered by that contract, and the amount of recovery by the plaintiff under the contract.

[3] By assignments of error Nos. 4 and 5 defendant raises the question whether the trial judge committed error in the charge to the jury. Assignment of error No. 4 is to the court's summation of the contentions of the parties in regard to the evidence pertinent to the second issue submitted to the jury. We are of the opinion that the question raised by assignment of error No. 4 is without merit, and that assignment of error is overruled. Assignment of error No. 5 is to the portion of the court's charge on *quantum meruit* recovery. Defendant argues that there was insufficient evidence to raise any issue as to *quantum meruit* recovery and that, therefore, the charge of the court on that issue was erroneous. However, assuming *arguendo* that there was insufficient evidence to raise an issue as to *quantum meruit* recovery, which we do not concede, even so the charge of the court as to that issue would not amount to prejudicial error, since the jury found the facts to be that there was an express contract and gave recovery to the plaintiff, not on a *quantum meruit* basis, but on the basis of the difference between the amount due to the plaintiff under the contract and the amount paid to the plaintiff at the time of trial.

The result of the foregoing is this: As to the directed verdict on defendant's counterclaim, reversed; as to the judgment in favor of the plaintiff, affirmed.

Affirmed in part and reversed in part.

Judges BRITT and VAUGHN concur.